OKLAHOMA BINDWEED LAW
Title 2 O.S. 3-235 [2-3-235] (1971) applies to both real and personal property. An easement holder is responsible for bindweed control under the provisions of Title 2 O.S. 3-231 [2-3-231] (1971). The Commissioners of the Land Office are responsible for bindweed control on state-owned school lands under the provisions of Title 2 O.S. 3-236 [2-3-236] (1971). Under Section 2 O.S. 3-236 [2-3-236] a company, such as a public utility, may purchase bindweed control chemicals at one-half price from the Board of County Commissioners. The special fund created to control bindweed may be carried over from one accounting period to the next if the control of bindweed has not been wholly accomplished. The Attorney General has received your request for an opinion wherein you ask the following questions dealing with specific provisions of the Oklahoma Bindweed Law (Title 2 O.S. 3-221 [2-3-221] through 2 O.S. 3-241 [2-3-241] (1971)): "1. Section 2 O.S. 3-235 [2-3-235] (1971): Does the two-mill levy apply to both real and personal property? "2. Section 2 O.S. 3-231 [2-3-231] (1971): Who is responsible for cost of control in cases where easements have been issued across private lands to other entities (public and private) — landowner or easement holder? "3. Section 2 O.S. 3-236 [2-3-236] (1971): Who is responsible for cost of control on state owned school land — School Land Commission or lease holder? "4. Section 2 O.S. 3-236 [2-3-236] (1971): Does this section authorize companies, such as public utilities, to purchase control chemicals at one-half price from the Board of County Commissioners? "5. General: Does State Statute authorize the carryover of unexpended funds from one accounting period to the next?" As to the first question, 2 O.S. 3-235 [2-3-235] (1971) provides in part: "The County Assessor of each county containing a bindweed control district, or anyone when acting in the capacity of the county assessor, is hereby directed and it shall be his duty to ascertain each year the approximate amount of land and highways infested with bindweed and its location in the bindweed control district, and transmit such information, not later than June 1 of each year, to the president of the State Board of Agriculture and to the Board of County Commissioners in the district pertaining to bindweed infestation in their respective jurisdiction. On the basis of such information the tax or assessment levying body of each county shall make an assessment in the district each year when needed for the purpose of paying their part of the cost of control and eradication thereof as provided in this act; provided, however, that each county shall make an assessment in the district each year when needed in addition to all other levies and assessments now authorized by law, in such amount as is deemed to be necessary but not to exceed two (2) mills in any one year." ((Emphasis added) Generally, levies and assessments in Oklahoma are considered to apply to both real and personal property within the limitations set forth in the Oklahoma Constitution unless the statute permitting the levy expressly provides otherwise. ArticleX, Section 8 of the Oklahoma Constitution provides in part: "All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair, voluntary sale, except real property and tangible personal property shall not be assessed for taxation at more than thirty-five percent (35%) of its fair cash value, estimated at the price it would bring at a fair, voluntary sale." Section 2 O.S. 3-235 [2-3-235] does not specify that the assessment must be made against one character of property and not another. The language of the section must be construed as providing for an assessment against any property in the county subject to ad valorem taxation. Therefore, your first question must be answered in the affirmative. The two-mill levy for the eradication of bindweed applies to both real and personal property. Question 2 dealing with the responsibility of the cost of bindweed control and eradication where "easements have been issued across private lands" refers to Title 2 O.S. 3-231 [2-3-231] (1971), which provides: "It shall be the duty of any person to control the spread of and to eradicate bindweed infesting any private or public lands owned or supervised by him in a bindweed control district and use such method for that purpose and at such times as are approved and adopted by the State Board of Agriculture." The general rule as to who is responsible for the maintenance of an easement is stated in 28 C.J.S. Easements, 94A: "Ordinarily, he who uses an easement, rather than the owner of the servient estate, must keep it in proper condition unless there is a special agreement or prescriptive right to the contrary." The easement holder would be responsible for maintenance of the easement. The general rule concerning the duty of the owner of the servient estate is set forth in 28 C.J.S. Easements, 72: "In the absence of special agreement to the contrary, the owner of the servient estate is under no obligation to take any affirmative action, his duty being fulfilled if he abstains from acts inconsistent with the proper enjoyment of the easement." Therefore, the dominant estate holder, i.e., easement holder, would be responsible for the cost of eradication of the bindweed. The servient estate holder, i.e., landowner, would not be responsible for the cost unless there is an agreement between the parties to the contrary. As to your Question 3, reference should be made to Title 2 O.S. 3-236 [2-3-236] (1971) which provides in part: "The cost of controlling and eradicating bindweed on all lands or highways in a bindweed control district owned or supervised by a state department or commission shall be paid by the state department or commission supervising such lands or highways out of funds appropriated to its use. . . ." (Emphasis added) Reference in your Question 3 is made to the "School Land Commission," a commonly used appellation for the Commissioners of the Land Office who have control and authority over the school lands of the State. Title 64 O.S. 1 [64-1] (1971) provides: "The Governor, Secretary of State, State Auditor, Superintendent of Public Instruction, and the President of the Board of Agriculture, shall constitute the Commissioners of the Land Office, who shall have charge of the sale, rental, disposal, and managing of the school lands and other public lands of the State, and of the funds and proceeds derived therefrom, under rules and regulations prescribed by the Legislature." Therefore, by a plain reading of Title 2 O.S. 3-236 [2-3-236] (1971) and Title 64 O.S. 1 [64-1] (1971), the responsibility for costs of the eradication of bindweed on state-owned school lands would fall upon the Commissioners of the Land Office unless a lease agreement provides to the contrary. Question 4 refers to Title 2 O.S. 3-236 [2-3-236] (1971) which provides in part: "On all other lands the owner thereof shall pay the cost of control and eradication of bindweed; provided, that landowners or supervisors may purchase chemical material from the Board of County Commissioners at one-half the total cost thereof." * * * "Such Board of County Commissioners, however, shall be authorized to collect the additional one-half of the chemical cost for persons who have purchased chemicals at half cost but do not use them according to the approved methods for bindweed control." Corporations such as public utilities may own land in Oklahoma subject to certain limitations set out in Title 18 O.S. 1.20 [18-1.20] (1971). It is clear that a public utility is an owner within the meaning of Title 2 O.S. 3-236 [2-3-236] (1971) and may purchase control chemicals at one-half the price from the Board of County Commissioners. However, the Board of County Commissioners may collect the additional one-half of the cost of chemicals if the provisions of the Oklahoma Bindweed Law are not followed. As to Question 5, Title 2 O.S. 3-320 [2-3-320] (1971), provides: "Money raised by the County Commissioners in pursuance to the provisions of this act if especially appropriated constitutes a fund distinct from all others, in the hands of the County Treasurer." From a clear reading of this statute, the money raised by the County Commissioners from the assessments as set out in Title 2 O.S. 3-235 [2-3-235] (1971), is a special fund distinct from all others. Title 19 O.S. 387 [19-387] (1971), sets out what happens to an unexpended balance of a special fund: "Whenever there remains in the Treasury of any county an unexpended balance of any special fund, and all claims against such funds have been fully paid, and the purpose for which it was created has been fully observed, and there remains no further use for such balance for the purpose for which it was created, it shall be lawful for the Board of County Commissioners of such county to transfer such balance to any other fund of the county or subdivision to which such balance belonged." If the eradication of the bindweed has been completed at the end of an accounting period and all claims against such funds have been fully paid, this statute authorizes a transfer of the funds to any other fund. But, if the purpose for which the fund was created has not been completed and all claims against the fund have not been fully paid, the fund may be carried over into the next accounting period. It is, therefore, the opinion of the Attorney General that Question 1 dealing with Title 2 O.S. 3-235 [2-3-235] (1971) be answered in the affirmative and does apply to both real and personal property. In answer to Question 2, the easement holder would be responsible for the costs. In Question 3, the Commissioners of the Land Office would be responsible for the cost of eradication of bindweed on state-owned school lands in light of Title 2 O.S. 3-236 [2-3-236] (1971). The fourth question should be answered in the affirmative. Companies such as public utilities may purchase bindweed control chemicals at one-half price from the Board of County Commissioners. The general question, No. 5, must be answered in the affirmative. If the control of bindweed has not been wholly accomplished, the special fund may be carried over to the next accounting period. (Michael Cauthron)